1  STEVEN M. GOLDSOBEL (Bar No. 166405)
   BECKY HSIAO (Bar No. 232361)
2  LAW OFFICE OF STEVEN M. GOLDSOBEL
   1900 Avenue of the Stars, Suite 1800
3  Los Angeles, CA  90067
   Telephone:  (310) 552-4848
4  Facsimile:  (310) 552-9291
   Email:  steve@sgoldsobel.com
5
   Attorneys for Defendant
6  INTEGRATED GLOBAL CONCEPTS, INC.

7  ROBERT SCHNEIDER (*Admitted  Pro Hac Vice*)
   CHAPMAN AND CUTLER LLP
8  111 West Monroe Street
   Chicago, IL  60603
9  Telephone:  (312) 845-3000
   Facsimile:  (312) 516-1900
10 bschneid@chapman.com

11 Attorneys for Defendant
   INTEGRATED GLOBAL CONCEPTS, INC.
12

13
14                IN THE UNITED STATES DISTRICT COURT
15                   CENTRAL DISTRICT OF CALIFORNIA

16 | | |
|---|---|
| J2 GLOBAL, INC. AND ADVANCED MESSAGING TECHNOLOGIES, INC., | Case No. Case No. 12-CV-3439-DDP |
| Plaintiffs | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(3)** |
| vs. | |
| INTEGRATED GLOBAL CONCEPTS, INC., | Date: June 10, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 3<br>Honorable Dean D. Pregerson<br>312 N. Spring Street<br>Los Angeles, CA |
| Defendant. | |
| | Complaint Filed:  April 20, 2012 |

- iii -

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................1

II. j2'S POTENTIAL LOSS OF HYPOTHETICAL DAMAGES DOES NOT WARRANT MAINTAINING THE STAY ...............................3

   A. IGC is a Small Business With Six Employees and Any Potential Lost Infringement Damages Are Minimal ...........................3

   B. Any Potential Loss of Damages is a Result of j2's Own Conduct ........................................................................................................4

   C. The Court Should Not Maintain the Stay But Rather Dismiss the Case ............................................................................................................6

III. JUDICIAL ECONOMY AND BASIC FAIRNESS WARRANT DISMISSAL OF THIS CASE INSTEAD OF A TRANSFER TO THE NORTHERN DISTRICT .................................................................................8

IV. CONCLUSION ..................................................................................................11

# TABLE OF AUTHORITIES

### Cases

*Adams v. California Dep't of Health Service,* 487 F.3d 684, 688 (9th Cir. 2007) ...... 8

*Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 629 (9th Cir. 1991) .......... 7, 8

*Asset Allocation & Mgt. v. Western Employers Ins.*, 892 F.2d 566, 571 (7th Cir. 1989) ............................................................................................................................. 7

*British Telecommunications PLC v. McDonnell Douglas Corp.*, 1993 WL 149860 (N.D. Cal. May 3, 1993) ........................................................................................ 8

*Cedars-Sinai Medical Ctr. v. Shalala,* 125 F.3d 765, 769 (9th Cir. 1997) .................. 8

*Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 749 (9th Cir. 1979) ............................................................................................................. 7

*Clinton v. Jones*, 520 U.S. 681 (1997) ........................................................................ 6

*Indiana State Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275 (2009) ............ 6

*Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir. 1987) ...... 5

### Rules

Fed. R. Civ. P. 13 ................................................................................................... 5, 6
Local R. 7-18 ............................................................................................................ 10
N.D. Cal. Patent Rule 3-1 .......................................................................................... 1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(3)**

## I. INTRODUCTION

j2 cites no authority that would permit the Court to award damages using the filing date of the Complaint in this case, were it to ever enter judgment based on counterclaims transferred from the Northern District. The same would be true if the Court transferred this case to the Northern District. While j2 suggests that the cases could be consolidated, the consolidation of the cases does not change the claims or the rights of the parties. Further, even if j2 prevails in the breach of contract dispute in the Northern District, j2 cannot simply dismiss the claims in the Northern District and pick up where it left off in this Court. At bottom, the only way j2 can obtain damages based on the filing date of the Complaint in this case is if the Court requires IGC to answer the Complaint and fully litigate this case, which would cause a substantial duplication of effort by IGC. While the Court could possibly delay this result by staying this case, the result would not change. In fact, the arguments favoring dismissal would only become more compelling, as IGC will have devoted more resources to defending j2's infringement claims in the San Jose Action.

IGC is a small business with six employees that is operated out of a house. j2 sued IGC ten years after it had actual notice of any potential infringement. Given the size of IGC's business, j2's hypothetical lost damages, if it eventually proves infringement, may be as little as a few thousand dollars. j2's arguments for keeping this case open might have had some merit had they never brought new infringement claims in the Northern District and forced IGC to respond. But what should be dispositive in granting the Motion is that j2 filed a notice seeking to immediately advance those claims and trigger the deadlines in that Court's local patent rules. (*Heiser Dec.* Ex. 8.) If granted, this request will begin the costly process of adjudicating j2's patent counterclaims in the Northern District, within 14 days, notwithstanding the potential application of the Release and Covenant Not to Sue. *See, e.g.,* N.D. Cal. Patent Rule 3-1.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(3)**

If the case is restarted in this Court sometime in the future, IGC would be forced to duplicate its defensive efforts, which will only grow with the passage of time.  While j2 complains about a hypothetical and unquantified loss of damages, as described below, even if this proved true, j2 has had numerous chances to avoid this outcome.  j2 could have easily avoided this scenario even as recently as April 12, 2013, by simply requesting a transfer of this case to the Northern District as opposed to filing new claims and seeking to immediately pursue them.

More fundamentally, to permit this case to remain open would grant j2 an unfair tactical advantage in these cases.  j2 wishes to aggressively and immediately pursue its infringement claims in the Northern District, while keeping open the prospect of restarting proceedings in this case if the San Jose Action does not proceed according to its wishes.  This would be highly prejudicial to IGC, as it must expend significant resources to defend itself against j2's claims in the Northern District, only to face the prospect of restarting the process again before this Court, possibly from square one.  And, under j2's hypothetical where it prevails on the contract claims and succeeds in transferring venue back to this Court, there would still be two identical cases pending in this Court.  This case would still be subject to dismissal.

Similarly, j2's request for a transfer of venue to the Northern District should be denied.  A transfer of this case would only force the Northern District to adjudicate an identical motion to dismiss to this one from IGC, because j2 has no right to maintain two identical cases against IGC in the same court.  A transfer may also require additional unnecessary briefing in order to have the cases consolidated before Judge Whyte if it is not randomly assigned to him.

This Court should not further multiply these proceedings, but rather it should decide the question of whether the hypothetical loss of a small and unspecified amount of damages to j2 warrants keeping the case on the docket in light of the preference against duplicative litigation in the federal courts, the prejudice to IGC,

and the substantial opportunities j2 had to avoid this hypothetical loss of damages. IGC's Motion should be granted.[1]

## II. j2'S POTENTIAL LOSS OF HYPOTHETICAL DAMAGES DOES NOT WARRANT MAINTAINING THE STAY

### A. IGC is a Small Business With Six Employees and Any Potential Lost Infringement Damages Are Minimal

j2 offers nothing to quantify the damages it might lose if the case is dismissed. However, IGC is a small business with six employees operated out of a house. (*Neurauter Dec*. ¶ 2 [Dkt. No. 9-1].) IGC's sales are miniscule compared to those of j2, a public company with a market capitalization of almost $2 billion. Given IGC's size, even if j2 were to somehow prevail across the board in the Northern District, the actual economic loss to j2 for the year's worth of damages it claims it could lose is insignificant to a company the size of j2, particularly when viewed in light of the legal fees and costs that IGC must incur in defending against j2's claims.

Further, as this Court previously noted, "j2 waited a number of years after its patents had issued before bringing this infringement action." *Order Denying Motion to Dismiss* at 4. [Dkt. No. 23.] (*Heiser Dec*. Ex. 1.) j2 waited over a decade after it first targeted IGC on certain of the patents-in-suit before filing suit. [Dkt. No. 9-1.] (*Neurauter Dec*. ¶ 24.) Also, j2 has known since the day the first patent-in-suit issued in March 2001 that it had potential claims against IGC because it licensed IGC's software. [Dkt. No. 9-1.] (*Neurauter Dec*. ¶20-21.) Yet it did not file suit for over ten years, which further undermines the only prejudice j2 has identified, the "potential" loss of one year's worth of infringement damages. If j2 wished to maximize its potential damages against IGC, it should have acted in a timely manner.

---

[1] Subsequent to the filing of the Motion, j2 filed a motion to dismiss certain of IGC's counterclaims in the San Jose Action. *See*, Case No. 12-cv-03434-RMW [Dkt. No. 47]. Given that j2 has now asked the Northern District to make additional dispositive rulings regarding IGC's defenses, the argument for dismissing this case is strengthened.

### B.  Any Potential Loss of Damages Is a Result of j2's Own Conduct

j2 had numerous opportunities to avoid losing any damages.  For example, j2 could have simply agreed to a transfer of this case to the Northern District in the summer of 2012 when IGC brought its initial motion [Dkt. No. 9], so that the claims could be heard along with the breach of contract claims.  Instead, j2 argued that the Release and Covenant Not to Sue did not apply to j2's patent claims.  [Dkt. No. 12.] This Court did not accept j2's position and instead granted IGC a stay of proceedings pending further developments in the San Jose Action.

Then, instead of seeking a transfer of its patent claims to avoid losing any potential damages, j2 made a second attempt to argue this issue by filing a motion to dismiss and for transfer of venue to this court in the Northern District, necessitating another round of costly briefing by IGC on this issue. (Heiser Dec. Ex. 2.)  But that Court found j2's argument unpersuasive, and denied the motion to transfer.  *San Jose Ruling* at 4 (*Heiser Dec*. Ex. 3) ("The Court finds no reason not to honor the forum selection clause.").  Yet j2 still did not seek a voluntary transfer of this case to the Northern District after that ruling.

j2 then passed up a final opportunity to preserve its damages, and instead opened a new front of litigation against IGC by filing the identical claims as counterclaims in that case. (*Heiser Dec*. Ex. 4.)  This forced IGC to answer those infringement claims and add its defensive patent-related counterclaims to preserve its right to make those arguments. (*Heiser Dec*. Ex. 5.)  Much of this legal work may be wasted if j2 dismisses its claims with the Northern District and forces IGC to start over in this Court.

j2 notes what it characterizes as skepticism in the Northern District's ruling of IGC's claims.  Although that Court will not be the trier of fact in that case since both j2 and IGC have demanded trial by jury, this only reinforces the need for dismissal. If j2 believed IGC's claims in the San Jose Action were meritless, it could have preserved its damages by quickly litigating that issue in the San Jose Action and then

restarting proceedings in this Court, instead of complicating that case with patent counterclaims it wished to pursue here. But it chose not to do that, instead filing identical infringement claims in the San Jose Action.

j2 claims without citation to any authority that it filed the identical claims in the San Jose Action because they were compulsory counterclaims. *Response* at 2. However, since this case was already on file at the time that IGC filed its complaint in the San Jose Action, it is beyond any doubt that the infringement claims were not compulsory. FED. R. CIV. P. 13(a)(2) ("The pleader need not state the claim if...when the action was commenced, the claim was the subject of another pending action."). As such, this is no justification for j2's duplicative claims.

Further, in determining what constitutes a compulsory counterclaim, the Ninth Circuit applies a "logical relationship" test to determine whether a claim and counterclaim arise out of the same transaction or occurrence. This test analyzes "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir. 1987)(citations omitted).

Here, the essential facts supporting IGC's breach of contract claims have nothing to do with whether IGC's MaxEmail service employs technology that infringes the claims of the patents-in-suit. Further, j2's counterclaims in the San Jose Action were merely permissive because even if j2 proves infringement, this would not be not a defense to liability for j2's breach of the Release and Covenant Not to Sue in commencing this action. In fact, if IGC is correct, the filing of the new infringement counterclaims has only increased j2's liability and provided an additional breach of the Release and Covenant Not to Sue.[2]

---

[2] Similarly, if IGC is correct that the Release and Covenant Not to Sue cover the patents-in-suit, then j2 is legally barred from bringing any infringement claims — its infringement claims cannot be compulsory. Conversely, if j2's interpretation is correct, j2's infringement claims cannot "arise[] out of the transaction or occurrence" as IGC's breach of contract claims. FED. R. CIV. P. 13(a)(1).


Given that Rule 13(a)(2) is directly on point in showing that the previously filed infringement claims were not compulsory counterclaims in the Northern District, and given the lack of a relationship to IGC's claims, the logical inference is that j2 made a tactical decision that it would be more beneficial to j2, and more disruptive and costly to IGC, if j2 immediately pursued the infringement claims, rather than allow the San Jose Action to run its course and restart the infringement case in this Court if it prevailed.  When viewed in light of the sophistication of j2's counsel, and the lack of any explanation or authority to the contrary, the excuse that j2 believed the counterclaims were compulsory is dubious.

But even if j2 had shown that it was forced to file the counterclaims because they were compulsory, this would still not justify seeking to immediately force litigation on the patent claims in the Northern District in the face of the potential application of the Release and Covenant Not to Sue. (*Heiser Dec*. Ex. 8.)  Thus, a careful examination of the record suggests that any potential loss of damages was the result of a calculated decision to forego these minimal damages to keep the pressure on IGC in the San Jose Action.  The Court should not permit j2 to keep this case open as tactical leverage against IGC or as a possible escape hatch if the San Jose Action does not proceed as it wishes.  j2 will get a fair opportunity in the Northern District to prove its damage claims, and this case should be dismissed.

### C. The Court Should Not Maintain the Stay But Rather Dismiss the Case

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Indiana State Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275, 2276-77 (2009).  j2 has not met this burden, and its bases for maintaining the stay are misplaced.

First, as a practical matter, j2 does not contest that the San Jose Action is already much further along than this case, and maintaining the stay is only going to exacerbate this gap. Under such circumstances, dismissal is appropriate. *Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 749 (9th Cir. 1979) (finding that where duplicative actions are pending in two federal courts, and the second-filed suit has progressed further than the first-filed suit, dismissal of the first in favor of the second is appropriate). Given j2's aggressive stance in the Northern District, there is no practical way that this case could ever catch up to the San Jose Action if it were ever litigated.

j2 argues that "[t]here is no reason to force another District Court to expend significant resources to familiarize itself with the patents and technology, and potentially simultaneously adjudicate the same issues as this Court." *Response* at 4. However, this is precisely what j2 has done by filing and aggressively litigating duplicative claims in the Northern District.

Further, although the Northern District has previously rejected j2's arguments for a transfer to this Court in the context of the forum selection clause, the prospect of a future transfer is not a basis for keeping the case open, as it will be up to the Northern District as to whether the judicial economy concerns cited by j2 warrant reconsideration of its decision to keep the case. That is not a reason to allow this separate and identical case to linger unnecessarily on the Court's docket indefinitely.

Additionally, unlike the cases cited by j2, there are no "statute of limitations" issues here that can bar j2 from receiving relief. Rather, the only issue is whether j2 might lose a minimal and unquantified amount of damages. This is not the type of prejudice referred to in the cases cited by j2. *See*, *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 629 (9th Cir. 1991) (statute of limitations could bar entire action, not merely limit damages); *Asset Allocation & Mgt. v. Western Employers Ins.*, 892 F.2d 566, 571 (7th Cir. 1989) (reversing mandatory injunction requiring dismissal of other suit); *British Telecommunications PLC v. McDonnell Douglas Corp.*, 1993 WL

149860 (N.D. Cal. May 3, 1993) (*citing Alltrade* for proposition that potential lack of personal jurisdiction in other court warranted stay as opposed to dismissal). All of these cases involve true statute of limitations or jurisdictional problems that are not present in the San Jose Action. Any potential loss of damages by j2 is self-inflicted as a result of its decision to file the counterclaims in the San Jose Action. This does not warrant keeping the case open.[3]

Under the principle of federal comity, a district court "has discretion to transfer, stay, or dismiss" an action whenever it is duplicative of a parallel action already pending in another federal court. *Cedars-Sinai Medical Ctr. v. Shalala,* 125 F.3d 765, 769 (9th Cir. 1997). In this case, in light of all of the factors above, and the fact that j2 will suffer little if any prejudice, dismissal is warranted.

## III. JUDICIAL ECONOMY AND BASIC FAIRNESS WARRANT DISMISSAL OF THIS CASE INSTEAD OF TRANSFERRING IT TO THE NORTHERN DISTRICT

j2 cites no authority for the Court's ability to transfer the case to a court where j2 already has identical claims pending. However, a transfer of this duplicative case to the Northern District would be improper because j2 is not permitted to maintain two identical actions against IGC in that district. *Adams v. California Dep't of Health Service,* 487 F.3d 684, 688 (9th Cir. 2007) ("Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'") (citations omitted).

There are also substantial judicial economy and fairness concerns that warrant dismissal. If the case were transferred, IGC would be forced to file another substantially identical motion to dismiss the claims as duplicative. If that motion

---

[3] Even under j2's convoluted application of the first-to-file rule, the Court still retains discretion not to apply it. *Alltrade*, 946 F.2d at 628 ("The most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'") (citations omitted).

were denied, IGC would be forced to prepare and serve answers and counterclaims to the transferred complaint, and j2 would potentially be permitted to file new motions to dismiss those counterclaims. j2's decision to inject the patent claims into the San Jose Action has already forced IGC to bring truly compulsory "counterclaims to counterclaims" to address the invalidity, unenforceability, non-infringement, and related compulsory counterclaims to j2's existing counterclaims in the Northern District. (*Heiser Dec.* Ex. 5.) As noted above, j2 has filed a motion to dismiss certain of these claims. Anything other than dismissal of this case can only result in substantial duplication of effort.[4]

j2 states that it will not proceed in two different districts simultaneously. *Response* at 3. However, IGC will still be substantially harmed if j2 retains the option of restarting this case. Now that j2 has launched its claims in the Northern District, substantial duplication of effort is now unavoidable, because the complaint in this case would still have to be answered, infringement contentions made, and discovery taken in this case. j2 cannot simply dismiss the claims in the Northern District and pick up where they left off in this Court. At the same time, if j2 seeks and is granted a discretionary transfer in the middle of the San Jose Action, then this case serves no purpose.

j2 cites no authority that permits this Court to enter judgment using the filing date of this case to award damages on transferred claims. The same would be true if this Court transferred the case to the Northern District. The only way j2 can obtain damages based on the filing date in this case is if the Court requires IGC to file an answer and otherwise duplicate its efforts in the Northern District. The fact that the cases might be consolidated does not enhance the damages that j2 can receive. *See,*

---

[4] If the case were transferred, IGC could also be forced to bring a motion to consolidate after the case is opened in the Northern District, possibly before a different judge, if the case is not randomly assigned to Judge Whyte. That will impose further cost and delay to IGC, all for the minimal damages to j2 that it knew it could lose when it filed its counterclaims. Judicial economy and basic fairness favor dismissal.

*J. G. Link & Co. v. Continental Cas. Co.*, 470 F.2d 1133, 1138 (9th Cir. 1972)("the law is clear that an act of consolidation does not affect any of the substantive rights of the parties.")(*citing* 5 J. MOORE'S FEDERAL PRACTICE § 42.02 (2d ed. 1971)).

While the Court could delay this outcome by maintaining the stay, the result would not change. In fact, the case for dismissal would only grow stronger the further that j2's counterclaims in the Northern District progressed, as IGC devotes more and more resources to its defense. As such, a further stay serves no purpose, and the case should be dismissed. j2 should not be rewarded for forcing IGC to incur significant cost in responding to its counterclaims in the San Jose Action, only to be absolved of the consequences of its actions. The Northern District can fairly adjudicate j2's pending counterclaims and this case should be dismissed.[5]

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

---

[5] Finally, j2 claims in a footnote that IGC's motion "amounts to a motion for reconsideration" and that it violates Local Rule 7-18. However, j2 is itself asking the Court to reconsider its prior ruling and transfer the case to the Northern District. *Response* at 5. Regardless, IGC is simply complying with the intent of the Court's order and informing the Court of two critical new developments that now warrant dismissal. First, the Northern District's finding of "no reason not to honor the forum selection clause." (*San Jose Ruling* at 4; Dkt. No. 41 (*Heiser Dec.* Ex. 3).) Second, j2's assertion of new and identical claims in that case. To the extent it applies, IGC's Motion is permitted under both Local Rule 7-18(a) (material difference in fact) and (b) (emergence of new material facts). Nothing in IGC's Motion purports to reargue the merits of the original motion to stay or transfer.

## IV.  CONCLUSION

Nothing in j2's Response warrants keeping this case indefinitely on the Court's docket or transferring it to the Northern District. Allowing the case to remain stayed is inconsistent with the strong policy against duplicative litigation, and will grant j2 an unfair tactical advantage in presenting its infringement claims.  j2 has had a full and fair hearing in two courts on the venue issue, and has made a tactical decision to immediately and aggressively pursue its infringement claims in the Northern District. IGC has already incurred significant expense in dealing with these claims, and any hypothetical loss of damage to j2 is solely the result of its own litigation strategy. The Northern District can fully and fairly deal with the timing and sequence of the claims before it, and award j2 any relief to which it proves it is entitled.  This case should be dismissed.

DATED:  May 24, 2013                           LAW OFFICE OF STEVEN M. GOLDSOBEL


By_____/s/_____
Steven M. Goldsobel
Becky Hsiao
Attorneys for Defendant
Integrated Global Concepts, Inc.

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 1800, Los Angeles, CA 90067. On May 24, 2013, I served the **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(3)** on the interested parties of record in the action as set forth below:

Robert A. Sacks (sacksr@sullcrom.com)
Brian R. England (englandb@sullcrom.com)
Edward E. Johnson (johnsonee@sullcrom.com)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725

Frank L. Bernstein (fbernstein@kenyon.com)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216

Robert J Schneider (bschneid@chapman.com)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603-4080

[X]  BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION:  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document to be sent to the respective e-mail addresses of the parties.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 24, 2013 at Los Angeles, California.

_____/s/_____
STEVEN M. GOLDSOBEL

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(3)**